## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **NICHOLAS FRAZER,** on behalf of himself and all others similarly situated**,**<br><br>     Plaintiff,<br><br>     v.<br><br>**MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS WORLDWIDE LLC, ARNE SORENSON,** and **DOES 1-5,**<br><br>     Defendants. | Case No.<br>Hon.<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Nicholas Frazer, on behalf of himself and all others similarly situated, alleges as follows against Defendants Marriott International, Inc. ("Marriott"), Starwood Hotels & Resorts Worldwide LLC ("Starwood"), Arne M. Sorenson ("Sorenson") as President and Chief Executive Officer of Marriott, and Does 1-5.

## I.   NATURE OF THE CASE

1.     On November 30, 2018, Marriott announced a "data security incident" involving "unauthorized access to the Starwood network since 2014" (the "Data Breach"). The Data Breach, by Defendants' own admission, exposed information relating to hundreds of millions of people worldwide. Marriott initially estimated that "approximately 500 million guests" had their information exposed in the Data

Breach, but "after further data analysis" lowered their estimate to 383 million "guest records."

2.    The types of information exposed in the Data Breach (collectively, "Personal Information") include, but are not limited to: names, mailing addresses, telephone numbers, email addresses, passport numbers, birth dates, gender, arrival and departure information, reservation dates, communication preferences, payment card numbers, and payment card expiration dates.

3.    Defendants knew that they had an obligation to protect Personal Information, but failed to use reasonable measures to do so. Defendants left Personal Information unencrypted, improperly handled and stored it, and failed to maintain it in accordance with applicable cyber-security policies and procedures. Due to these failures, hackers were able to access Personal Information during a period extending from 2014 through at least September 2018.

4.    Defendants failed to disclose to individuals whose Personal Information was stored in Starwood's reservation systems and databases – including travelers who booked reservations through the Starwood reservation system or who were members of Starwood's Preferred Guest ("SPG") loyalty program – that their Personal Information was at risk.

5.    Defendants also failed to provide timely, accurate, and adequate notice of the Data Breach to Plaintiff or to the hundreds of millions of other individuals who had their data compromised in the Data Breach.

6.    Due to Defendants' failures, Plaintiff and others like him have had their Personal Information exposed to malicious actors. Their Personal Information – the

protection of which they relied on as part of the "benefit of the bargain" for doing business with Starwood or Marriott – is now, as a result of the Data Breach, available on the "Dark Web" allowing fraudsters to obtain the information they need to commit identity theft and other crimes. As a consequence, Plaintiff and others like him have been harmed and suffered damages.

7.      After the Data Breach, Plaintiff has, on at least eight occasions, received notice from a commercial monitoring service that his Personal Information is available on the Dark Web. Plaintiff has no reason to believe that his information was leaked to the Dark Web through any avenue other than the Data Breach.

8.      Accordingly, on behalf of himself and those similarly situated, Plaintiff seeks damages, as well as injunctive relief to ensure that Marriott adequately protects Personal Information going forward.

## II.  JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million exclusive of interests and costs, there are more than 100 class members, and Plaintiff and Defendants are not citizens of the same state.

10.     This court has personal jurisdiction over Defendants because Defendants intentionally avail themselves of this jurisdiction by conducting Starwood's corporate operations here and by promoting, selling, and marketing Starwood's and Marriott's services within Connecticut. Defendant Starwood maintains its principal headquarters in Stamford, Connecticut.

11.     Venue is proper under 28 U.S.C. §1391(b)(1) and §1391(c)(2), because Marriott and Starwood are corporations that regularly conduct business in this District such that they are subject to personal jurisdiction in this judicial district. Venue is also proper because a substantial number of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Starwood's governance and management personnel that led to and perpetuated the Data Breach.

## III.  PARTIES

12.     Plaintiff Nicholas Frazer is lifelong citizen of the United Kingdom, and currently resides in the United Kingdom.  He has been a member of the SPG loyalty program since 2017.

13.     While in the United Kingdom, Plaintiff provided Personal Information to Defendants on the understanding that Defendants would keep it secure, employ reasonable and adequate security measures to ensure that hackers would not compromise it, and notify him promptly in the event of a breach.

14.     Defendant Marriott International, Inc., is a Delaware corporation with its principal executive offices located at 10400 Fernwood Road, Bethesda, Maryland 20817.

15.     Defendant Starwood Hotels & Resorts Worldwide LLC is an indirect, wholly owned subsidiary of Marriott.  On September 23, 2016, Marriott acquired Starwood, formerly known as Starwood Hotels & Resorts Worldwide, Inc. Starwood's principal executive offices are, and at all relevant times were, located at One StarPoint (formerly, 333 Ludlow Street), Stamford, Connecticut 06902.

16.    Defendant Arne M. Sorenson has served as Marriott's President and Chief Executive Officer since March 31, 2012.  Defendant Sorenson was directly involved in the management of Marriott and exercised control over Starwood and Marriott.  Sorenson was directly or indirectly involved in the oversight or implementation of Marriott's internal controls regarding the privacy of Starwood and Marriott guests.

17.    The true names of Does 1 through 5 ("Doe Defendants"), whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who sues these Defendants under fictitious names.  Each of the Doe Defendants is responsible in some manner for the conduct alleged herein, including, without limitation, by way of aiding, abetting, furnishing the means for, and/or acting in capacities that create agency, *respondeat superior*, and/or predecessor or successor-in-interest relationships with other Defendants.  The Doe Defendants actively assisted or participated in the negligent and wrongful conduct alleged herein in ways that are currently unknown to Plaintiff.

18.    Plaintiff makes all allegations contained in this Complaint against all Defendants, including the Doe Defendants.  Plaintiff reserves the right to amend this Complaint to allege the true names, capacities, and actions of the Doe Defendants once they are ascertained, and to add additional facts and/or legal theories.

## IV.   FACTUAL BACKGROUND

### A.    Starwood and Marriott Collect and Store Personal Information

19.    Marriott is a global hospitality company that operates more than 6,700 properties in 130 countries and territories, including the United States and countries in the European Union.  Marriott reported $22 billion in revenue in 2017.

20.     In November 2015, Marriott announced that it would purchase Starwood for $13.6 billion.  Marriott's acquisition of Starwood was completed in September 2016, making Marriott the world's largest hotel chain.  Before the acquisition, Starwood was a separate hospitality company that operated hotel brands including W Hotels, St. Regis, Sheraton, Four Points by Sheraton, Westin, Element, Aloft, The Luxury Collection, Tribute Portfolio, Le Meridien, and Design Hotels, as well as Starwood-branded timeshare properties.

21.     Starwood's reservation system was purportedly separate from pre-acquisition Marriott hotels' reservation systems until at least December 2018.

22.     At all times relevant to this action, Starwood and Marriott received and stored massive amounts of Personal Information and used that information to maximize profits through predictive marketing and other marketing techniques. Starwood and Marriott promised to maintain this Personal Information in accordance with their privacy policies.

23.     Plaintiff would not have been an SPG member, stayed at a Starwood or Marriott property, or supplied his Personal Information for reservations had he known that Defendants would not adequately protect his Personal Information. Alternatively, even if Plaintiff had known the concealed risk inherent in booking at Starwood or Marriott properties and chosen to book anyway, the room would have been worth less in the marketplace, in order to compensate him for that risk.

24.     Starwood and Marriott failed to disclose their negligent and insufficient data security practices, including the unencrypted storage of payment card information and passport numbers.  Plaintiff and consumers relied on or were

misled by these omissions when they made reservations and supplied Personal Information to Starwood or Marriott through their SPG membership or otherwise.

25.    By withholding important information from consumers about Starwood's and Marriott's data security, Defendants created an asymmetry of information between themselves and consumers that precluded consumers from acting to avoid or mitigate injury.

**B.    Personal Information Has Significant Value and Must Be Protected**

26.    Defendants knew or should have known at all relevant times that Personal Information is valuable and a frequent target of hackers and other malicious actors.  The names, email addresses, telephone numbers, payment card information, passport information, and other valuable Personal Information provided to Starwood and Marriott can be used to gain access to a variety of consumer accounts and websites.

27.    The value of Personal Information on the black market is widely known. For example, the Federal Trade Commission sued Wyndham Worldwide Corporation in 2012 because the company failed to provide reasonable cybersecurity protections for customer data.  In August 2018, the U.S. Department of Justice indicted members of an Eastern European cybercrime ring called Fin7, which targeted, among others, hotel chains.  Despite this well-publicized litigation and the frequent public announcements of data breaches by retailers and hotel chains, Defendants chose to maintain an inadequate system to protect the Personal Information of Plaintiff and other class members.

28.     Once stolen, Personal Information can be used in different ways.  One of the most common uses is to offer the Personal Information for sale on the Dark Web, an opaque part of the Internet that makes it difficult for authorities to detect the location or owners of a website.  The Dark Web is not indexed by normal search engines such as Google and is only accessible using a specialized tool that aims to conceal users' identities and online activity.  When Personal Information ends up on the Dark Web, there is almost no way to track down who has gained access to that Personal Information.

29.     Once someone buys Personal Information, the buyer can then use it to infiltrate different areas of that person's digital life, including bank accounts, social media accounts, and credit card accounts.  By breaking into the victim's accounts, a buyer can obtain even more sensitive data from those accounts.

30.     Identity thieves can also use stolen Personal Information to embarrass, blackmail, or harass, or to commit fraud, including by fraudulently obtaining identification documents, tax refunds, and government benefits.  Victims of "new account identity theft" – *i.e.*, the opening of new credit or other accounts using stolen personal information – must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with creditors.  Many of these measures require victims to incur expenses.

31.     Another form of identity theft, dubbed "synthetic identity theft," occurs when thieves combine real and fake identifying information to create new identities, then use those identities to open new accounts.  Synthetic identity theft is more

difficult to unravel than traditional identity theft because it is not tied to a single individual.

32.     The problems associated with the theft of Personal Information are exacerbated by the fact that many identity thieves wait years before attempting to use the Personal Information they have obtained.  To protect themselves, victims need to remain vigilant against unauthorized data use for years or even decades.

**C.      Defendants' Inadequate Data Security Allowed the Breach of Hundreds of Millions of Individuals' Records**

33.     On November 30, 2018, Marriott first announced the Data Breach, estimating that the Personal Information of 500 million consumers had been affected.

34.     Marriott claimed that it discovered the vulnerability on September 8, 2018 "from an internal security tool regarding an attempt to access the Starwood guest reservation database," and that it "engaged leading security experts to help determine what occurred."

35.     Marriott reported that unauthorized actors had copied and encrypted information and had attempted to "remove" or, in other words, exfiltrate that Personal Information.

36.     Marriott later determined that the contents were from its Starwood guest reservation database.

37.     Marriott admitted that unauthorized actors had had access to the Starwood guest reservation database since 2014.

38.    The Starwood guest reservation database contains guests' and potential guests' Personal Information, including names, addresses, phone numbers, email addresses, passport numbers, SPG account information, dates of birth, gender, arrival and departure information, reservation dates, communication preferences, payment card numbers, and payment card expiration dates.

39.    The Data Breach is among the largest breaches in U.S. history.  Marriott has disclosed that as many as 383 million records were stolen, including 5.25 million unencrypted passport numbers, 18.5 million encrypted passport numbers, and 9.1 million payment card numbers.

40.    Asked in December 2018 how Marriott was handling guest and potential guest information since it merged Starwood's data into the Marriott reservations system, a company spokesperson stated, as reported in the New York Times: "We are looking into our ability to move to universal encryption of passport numbers and will be working with our systems vendors to better understand their capabilities, as well as reviewing applicable national and local regulations."

41.    Defendants' storage of unencrypted passport and payment card data was extremely reckless and unsafe.  So was their treatment of encrypted data.  Indeed, Defendants used only AES-128 encryption, which required only two elements for decryption, both of which appear to have been compromised in the Data Breach.

42.    The Data Breach affected individuals all over the world.  Marriott set up dedicated call centers to deal with the Data Breach in at least 55 countries, including Argentina, Australia, Austria, Belgium, Brazil, Bulgaria, Canada, Chile, China, Colombia, Croatia, Cyprus, Czech Republic, Denmark, Estonia, Finland,

France, Germany, Greece, Hong Kong SAR, China, Hungary, India, Indonesia, Ireland, Israel, Italy, Japan, Latvia, Lithuania, Luxembourg, Malaysia, Malta, Mexico, the Netherlands, New Zealand, Peru, Philippines, Poland, Portugal, Romania, Russia, Saudi Arabia, Singapore, Slovakia, Slovenia, South Africa, South Korea, Spain, Sweden, Switzerland, Taiwan, United Arab Emirates, the United Kingdom, the United States, and Vietnam.

43.    Marriott had reason to be especially vigilant regarding cyber-security.  In 2015, right after Marriott announced that it was acquiring Starwood, Starwood reported a data breach affecting hotel guests at many properties that occurred between November 2014 and October 2015.  Considering that breach, Marriott knowingly accepted considerable risk by acquiring Starwood, and it should have been on alert for other infirmities in Starwood's cyber-security.

44.    Quoted in the New York Times, Gus Hosein, executive director of Privacy International was incredulous that it purportedly took Defendants four years to detect the Data Breach:

> It's astonishing how long it took them to discover they were breached.  For four years, data was being pilfered out of the company and they didn't notice.  They can say all they want that they take security seriously, but they don't if you can be hacked over a four-year period without noticing.

## D.    Defendants Failed to Comply with FTC Requirements

45.    Federal and state governments have established security standards and issued recommendations to deter and prevent data breaches and the resulting harm to consumers.  The Federal Trade Commission ("FTC") has issued numerous guides highlighting the importance of reasonable data security practices.

46.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices.  The guidelines state that businesses should protect the Personal Information that they keep, properly dispose of Personal Information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems.  The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

47.    The FTC further recommends that companies: (i) not maintain cardholder information for longer than is needed for authorization of a transaction; (ii) limit access to sensitive data; (iii) require complex passwords to be used on networks; (iv) use industry-tested methods for security; (v) monitor for suspicious activity on the network; and (vi) verify that third-party service providers have implemented reasonable security measures.

48.    At all relevant times, Defendants were fully aware of their obligation to protect the Personal Information of Starwood's and Marriott's guests, users, and customers.  Defendants also were aware of the significant repercussions of failing to protect Personal Information.  Starwood and Marriott collected Personal Information from hundreds of millions of guests and consumers and knew that failing to protect this data would result in injury to consumers.

49.     Despite understanding the consequences of inadequate data security, Defendants failed to take appropriate protective measures to secure the Personal Information of guests and other individuals, including Plaintiff and class members.

50.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act").

**E.     Defendants' Inadequate Post-Data Breach Response**

51.     Defendants delayed notifying Plaintiff and class members of the Data Breach for at least three months, from September to November 2018.  The delay may have been much longer, as Marriott's due diligence in acquiring Starwood should have, and may indeed have, uncovered the Data Breach long before September 2018.

52.     On November 30, 2018, Marriott issued a press release announcing the Data Breach for the first time.  The press release stated that Personal Information which was compromised included names, mailing addresses, telephone numbers, email addresses, passport numbers, birth dates, gender, arrival and departure information, reservation dates, communication preferences, payment card numbers, and payment card expiration dates.  According to the press release, Marriott was first alerted to the Data Breach on September 8, 2018 via an "internal security tool, and that the company had more recently "discovered that an authorized party had copied and encrypted information, and took steps toward removing it."  It quotes Defendant Sorenson as stating "[w]e deeply regret this incident happened," that "[w]e fell short of what our guests deserve and what we expect of ourselves."  The

press release informed consumers that the company would "send[] emails … to affected guests" and that it would "provide guests the opportunity to enroll in WebWatcher" – a service that "monitors internet sites where personal information is shared" (*i.e.*, the Dark Web) – "free of charge for one year."

53.    Because of the delay in notifying consumers of their potential exposure, Plaintiff and other class members face a heightened risk of fraud than they otherwise would have had Defendants timely disclosed the Data Breach.

54.    Both because of (i) the delay in notification and (ii) the absence of sufficiently detailed information in the belated disclosures Marriott did make, Plaintiff and class members were left exposed to continued misuse, and an ongoing risk of misuse, of their Personal Information.

**F.    Plaintiff and Class Members Were Injured And Suffered Damages**

55.    Plaintiff has been a member of the SPG loyalty program since October 2017.  In addition, during the period of the Data Breach, Plaintiff was a guest at Starwood properties including the St. Regis Abu Dhabi in February 2018 and the Le Royal Meridien Beach Resort & Spa Dubai in 2014.  As a necessary consequence of his transactions and interactions with Starwood and Marriott, Plaintiff provided Personal Information to Defendants.

56.    Since Marriott announced the Data Breach, Plaintiff has received an email from Marriott indicating that his Personal Information was exposed in the Data Breach.  He also has been alerted on at least eight occasions that WebWatcher (the commercial monitoring service offered by Marriot) had observed his Personal Information having been accessed on the Dark Web.

57. Plaintiff believes, and has no reason not to believe, that his information was leaked to the Dark Web via the Data Breach. The leaked information relates to Plaintiff's SPG-linked email address. Relative to the time period prior to the Data Breach, Plaintiff has observed a significant increase in phishing and blackmail attempts in his SPG-linked email address.

58. The Personal Information of Plaintiff and class members is private and sensitive, and Defendants did not adequately protect it. Starwood and Marriott were not authorized to disclose Plaintiff's and class members' Personal Information.

59. The Data Breach was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff's and class members' Personal Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law. This includes Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and class members' Personal Information, and their failure to protect against reasonably foreseeable threats to the security of such information.

60. Starwood and Marriott had the resources to prevent or timely detect a breach. They made significant expenditures to market their hotels and hospitality services, but neglected to adequately invest in data security, despite the growing number of data intrusions and several years of well-publicized data breaches.

61. Had Defendants remedied the deficiencies in Starwood's and Marriott's information storage and security systems, followed industry guidelines, and adopted security measures recommended as minimum requirements by experts in the field,

they would have prevented or timely detected intrusion into their systems and the theft of Plaintiff's and class members' Personal Information.

62.    As a direct and proximate result of Defendants' wrongful actions and inactions and the resulting Data Breach, Plaintiff and class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and make the effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely monitoring their credit reports and accounts for unauthorized activity.

63.    Defendants' wrongful actions and inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and class members' Personal Information, causing Plaintiff and class members to suffer, and continue to suffer, compensable economic damages and other actual harm stemming from, for example:

a.  theft of their personal, financial, and identity information;

b.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being placed in the hands of criminals and misused via the sale of Plaintiff's and class members' information on the black market;

c.  the untimely and inadequate notification of the Data Breach;

d.  the improper disclosure of their Personal Information; and

e.  loss of privacy.

64.    Plaintiff and the class have also suffered, for example:

    a.   ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    b.   ascertainable losses in the form of deprivation of the value of their Personal Information, for which there is a well-established national and international market; and

    c.   overpayments to Starwood or Marriott for products and services purchased during the Data Breach in that a portion of the price paid was for the costs of reasonable and adequate safeguards and security measures that would protect Plaintiff's and class members' Personal Information, which Starwood and Marriott did not implement and, as a result, Plaintiff and class members did not receive what they paid for and were overcharged by Starwood or Marriott.

65.    Marriott continues to hold Personal Information of consumers, including Plaintiff and class members.

66.    Marriott has demonstrated an inability to prevent a data breach or stop it from continuing after being detected.  Thus, Plaintiff and class members have an interest in ensuring that their Personal Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## V.    CLASS ACTION ALLEGATIONS

67.    Pursuant to Rules 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit on behalf of himself and as a class action on behalf of the following class:

> **All individuals who are not U.S. citizens, and whose Personal Information was compromised, accessed, or stolen in the Data Breach.**

68.    Excluded from the class are: Defendants; any entities in which any Defendant or Defendants' subsidiaries or affiliates have a controlling interest; Defendants' officers, agents, and employees; and Defendants' immediate family members.  Also excluded from the class are judges and court personnel in this case, and any member of their immediate families.

69.    Plaintiff reserves the right to: (i) introduce sub-classes; and (ii) expand, limit, modify or amend class or sub-class definitions.

70.    **Numerosity and Ascertainability.  Fed. R. Civ. P. 23(a)(1).**  The members of the class are ascertainable and are so numerous that the joinder of all members is impractical.  While the exact number of class members is unknown to Plaintiff at this time, Marriott has acknowledged that Personal Information of hundreds of millions of customers all over the world has been compromised.

71.    **Commonality and Predominance.  Fed. R. Civ. P. 23(a)(2) and (b)(3).**  This action involves common questions of law or fact that predominate over any questions affecting individual class members, including:

a.  whether Defendants failed to comply with internal company policies and applicable laws, regulations, and industry standards relating to data security;

b.  whether Defendants knew or should have known that Starwood or Marriott did not employ reasonable measures to keep Plaintiff's and class members' Personal Information secure and prevent the loss or misuse of that information;

c.  whether Defendants owed a legal duty to Plaintiff and class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

d.  whether Defendants breached a legal duty to Plaintiff and class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

e.  whether class members' Personal Information was accessed, compromised, or stolen in the Data Breach;

f.  whether Defendants knew about, or should have known about, the Data Breach before it was announced to the public in September 2018;

g.  whether Defendants failed to timely notify the public of the Data Breach;

h.  whether Plaintiff and the class members are entitled to actual, statutory, or other forms of monetary relief;

i.  whether Plaintiff and the class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

72.     Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the common questions that predominate.

73.     **Issue Classes.  Fed. R. Civ. P. 23(c)(4).**  In the unlikely event a particular issue is not amenable to classwide adjudication, the predominance of common questions among the remaining issues supports class certification on those issues pursuant to Fed. R. Civ. P. 23(c)(4).

74.     **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of the other class members because, among other things, Plaintiff and the other class members were injured through Defendants' misconduct.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all other class members, which arise from the same facts, and there are no defenses that are unique to Plaintiff.

75.     **Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff will fairly and adequately represent and protect the interests of the members of the class.  Plaintiff's counsel are competent and experienced in litigating complex class actions.  Plaintiff and his counsel will fairly and adequately protect class members' interests.

76.     **Superiority of Class Action.  Fed. R. Civ. P. 23(b)(3).**
A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the class is impracticable.  Furthermore, the adjudication of this controversy through this class

action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.  Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied.

77.    **Classwide Equitable Relief.  Fed. R. Civ. P. 23(b)(2).**  The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.  Such individual actions would create a risk of adjudications that would be dispositive of the interests of other class members and otherwise impair their interests.  Defendants have acted and/or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate.

# VI.  CAUSES OF ACTION

### First Cause of Action:
### <u>Negligence, against All Defendants</u>

78.    Plaintiff repeats and realleges paragraphs 1-77, as if fully set forth herein.

79.    Defendants owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in Starwood's or Marriott's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things: (a) designing, maintaining, and testing

security systems to ensure that Plaintiff's and class members' Personal Information

in Starwood's or Marriott's possession was adequately secured and protected;

(b) implementing processes that would timely detect a breach of Starwood's or

Marriott's security systems; (c) timely acting upon warnings and alerts, including

those generated by Starwood's or Marriott's own security systems, regarding

intrusions to their networks; and (d) maintaining data security measures consistent

with industry standards.

80.    By knowingly disregarding standard information security principles,

despite obvious risks, and by allowing unmonitored and unrestricted access to

Plaintiff's and class members' Personal Information, Defendants breached their

duty to Plaintiff and class members to adequately protect and safeguard Personal

Information.  Further, Defendants failed to provide adequate oversight of Personal

Information with which they were entrusted, resulting in the Data Breach.

81.    Defendants should have discovered the Data Breach prior to September

2018.  Defendants knew or should have known about the Data Breach prior to that

time based, for example, on Marriott's due diligence in acquiring Starwood in 2016.

82.    Furthermore, the law imposes an affirmative duty on Defendants to

timely disclose unauthorized access and theft of Personal Information to Plaintiff

and class members, so they can take appropriate measures to mitigate damages,

protect against adverse consequences, and thwart future misuse of Personal

Information.

83.    Defendants breached their duty to notify Plaintiff and class members of

the unauthorized access by failing to notify Plaintiff and class members of the Data

Breach until November 30, 2018, months after the Data Breach was purportedly discovered, and four years since the Data Breach commenced. Defendant Marriott has not provided sufficient information to Plaintiff and class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and class members.

84.    Defendants' failure to implement proper security measures to protect Plaintiff's and class members' Personal Information, as well as Defendants' failure to timely notify Plaintiff and class members of the Data Breach, have caused Plaintiff and class members to suffer injury and damages.

85.    But for Defendants' negligent breach of their duties owed to Plaintiff and class members, their Personal Information would not have been compromised, accessed, or stolen.

86.    As a direct and proximate result of Defendants' negligence, Plaintiff and class members have been injured as described herein, and are entitled to damages, including punitive damages, in an amount to be proven at trial. Plaintiff's and class members' injuries include, for example:

    a.  theft of their Personal Information;

    b.  costs associated with requested credit freezes;

    c.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.  costs associated with purchasing credit monitoring and identity theft protection services;

e.  unauthorized charges and loss of use of and access to their financial account funds;

f.  costs associated with inability to obtain money from their financial accounts or being limited in the amount of money they were permitted to obtain from their financial accounts, including missed payments on bills and loans, and late charges and fees;

g.  adverse effects on their credit, including lowered credit scores resulting from credit inquiries following fraudulent activities;

h.  costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing payment cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, imposing withdrawal and purchase limits on compromised accounts, and replacing passports;

i.  the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their Personal Information being placed in the hands of criminals;

j.  damages to and diminution in the value of their Personal Information entrusted, directly or indirectly, to Defendants;

k.  continued risk of exposure to hackers and thieves of their Personal Information, which remains in Marriott's possession and is subject to

further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and class members' Personal Information; and

l.  overpayment for Defendant's services because Plaintiff and class members did not get the protection of their Personal Information for which they bargained.

**Second Cause of Action:**
**Negligence *Per Se*, against All Defendants**

87.  Plaintiff repeats and realleges paragraphs 1-86, as if fully set forth herein.

88.  Defendants owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in Marriott's or Starwood's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things: (a) designing, maintaining, and testing security systems to ensure that Plaintiff's and class members' Personal Information in Starwood's or Marriott's possession was adequately secured and protected; (b) implementing processes that would timely detect a breach of Starwood's or Marriott's security systems; (c) timely acting upon warnings and alerts, including those generated by Starwood's or Marriott's own security systems; and (d) maintaining data security measures consistent with industry standards.

89.  Defendants should have discovered the Data Breach prior to September 2018.  Defendants knew or should have known about the Data Breach prior to that time based, for example, on Marriott's due diligence in acquiring Starwood in 2016.

90.     Furthermore, the law imposes an affirmative duty on Defendants to timely disclose unauthorized access and theft of Personal Information to Plaintiff and class members, so they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of Personal Information.

91.     Defendants breached their duty to notify Plaintiff and class members of the unauthorized access by failing to notify Plaintiff and class members of the Data Breach until November 30, 2018, months after the Data Breach was purportedly discovered, and four years after the Data Breach commenced.  Defendant Marriott has not provided sufficient information to Plaintiff and class members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and class members.

92.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses such as Starwood and Marriott of failing to use reasonable measures to protect Personal Information.  FTC publications and orders, including those described above, also form part of the basis of Defendants' duty in this regard.

93.     Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information, failing to comply with applicable industry standards, and by failing to timely notify Plaintiff and class members of the Data Breach.  Defendants' conduct was particularly egregious given the nature and amount of Personal Information Starwood and Marriott obtained and stored (pertaining to approximately 383 million unique records), and the foreseeable

consequences of a data breach at hospitality chains as large as Starwood and Marriott, including, specifically, the damages that would result to Plaintiff and class members.

94.    Defendants' violation of the FTC Act constitutes negligence *per se*.

95.    Plaintiff and class members are within the class of persons that the FTC Act was intended to protect.

96.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.  The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices pertaining to Personal Information, caused the same or similar harm as that suffered by Plaintiff and the class.

97.    But for Defendants' breach of duties owed to Plaintiff and class members, Plaintiff and class members would not have been injured.

98.    The damages suffered by Plaintiff and class members were the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to fulfill their duties, and that the breach would cause Plaintiff and class members to experience the foreseeable harms associated with exposure of their Personal Information.

99.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the class have suffered, and continue to suffer, injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

100.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and class members have suffered and will suffer the continued risks of exposure of their Personal Information, which remains in Marriott's possession and is subject to further unauthorized disclosures so long as Marriott fails to undertake appropriate and adequate measures to protect it.

**Third Cause of Action:**
**<u>Breach Of Implied Contract, against All Defendants</u>**

101.    Plaintiff repeats and realleges paragraphs 1-100, as if fully set forth herein.

102.    Defendants solicited Plaintiff and class members to become loyalty program members and/or to make reservations at Starwood or Marriott properties. Plaintiff and class members accepted Defendants' offers and became loyalty program members and/or made such reservations.

103.    When Plaintiff and class members became loyalty program members or made reservations with Starwood or Marriott, they were required to—and did—provide their Personal Information to Defendants.  In so doing, Plaintiff and class members entered into implied contracts with Starwood or Marriott pursuant to which Defendants agreed to protect such Personal Information and to timely and accurately notify Plaintiff and class members if their Personal Information had been accessed, stolen, or compromised.

104.    Each reservation by Plaintiff and class members was made pursuant to mutually agreed-upon implied contracts with Starwood or Marriott under which Defendants agreed to safeguard and protect Plaintiff's and class members' Personal

Information and to provide accurate and timely notice if such information was accessed, stolen, or compromised.

105.    Plaintiff and class members would not have provided their Personal Information to Defendants in the absence of such an implied contract.

106.    Plaintiff and class members fully performed their obligations under the implied contracts with Starwood or Marriott.

107.    Defendants breached the implied contracts they made with Plaintiff and class members by failing to safeguard or protect class members' Personal Information and by failing to provide accurate and timely notice when their Personal Information was accessed, stolen, or compromised.

108.    As a direct and proximate result of Defendants' breaches of the implied contracts alleged above, Plaintiff and class members sustained actual losses and damages as described herein and paid more than they otherwise would have paid for Marriott's or Starwood's services.

**Fourth Cause of Action:**
**Breach of Duty of Good Faith and Fair Dealing, against all Defendants**

109.    Plaintiff repeats and realleges paragraphs 1-108, as if fully set forth herein.

110.    Common law implies a covenant of good faith and fair dealing in every contract.  Plaintiff and class members contracted with Starwood or Marriott by accepting offers to stay at one or more hotels.

111.    Plaintiff and class members performed the duties and obligations required under their agreements with Starwood or Marriott.

112.    All conditions precedent required for Starwood's or Marriott's performance under their contracts with Plaintiff and class members have occurred.

113.    Defendants did not provide, unfairly interfered with, or frustrated the right of, Plaintiff and class members to receive the full benefits of their agreements with Starwood or Marriott.

114.    Plaintiff and class members were damaged by Defendants' breach in that they paid for, but did not receive, the protections for their Personal Information to which they were entitled under the contracts with Starwood or Marriott.

**Fifth Cause of Action:**
**Violation of Connecticut Unfair Trade Practices Act,**
**C.G.S. § 42-110b, against All Defendants**

115.    Plaintiff repeats and realleges paragraphs 1-114, as if fully set forth herein.

116.    Defendants engaged in the conduct alleged in this Complaint in the context of transactions intended to result in, and which did result in, the sale of room reservations at Defendants' hotels to Plaintiff and class members.

117.    Both before and after its acquisition by Marriott, Starwood's principal place of business and corporate headquarters was in Stamford, Connecticut. Starwood thus operated a trade or commerce intimately associated with Connecticut.

118.    Defendants' acts and omissions which led to the Data Breach, including but not limited to their inadequate data security measures and failure to properly protect consumers' Personal Information, originated from and was effectuated in Connecticut, as Marriott maintains its Starwood data warehouse, which stored Plaintiff and the class members' Personal Information, in or about Stamford,

Connecticut.  For this reason, Plaintiff and class members suffered their injury, the theft of their Personal Information, in Connecticut.

119.    Defendants Starwood and Marriott are "persons" as defined by C.G.S § 42-110a(3).

120.    Defendants Starwood and Marriot are engaged in "trade" or "commerce" as those terms are defined by C.G.S. § 42-110a(4).

121.    At the time of filing this Complaint, Plaintiff is sending notice to the Attorney General and Commissioner of Consumer Protection pursuant to C.G.S. § 42-110g(c).  Plaintiff will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

122.    As alleged above, Defendants engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of C.G.S. § 42-110b, including:

> a.  representing that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;
>
> b.  representing that services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> c.  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

123.    Defendants made misrepresentations and omissions relating to Personal Information, data security, and the Data Breach that were material because they were likely to deceive reasonable consumers.

124.    Defendants made misrepresentations and omissions relating to Personal Information, data security, and the Data Breach that were intended to mislead Plaintiff and class members and induce them to rely on their misrepresentations and omissions.

125.    Had Defendants disclosed to Plaintiff and class members that Starwood's or Marriott's data systems were not secure and, thus, were vulnerable to attack, Defendants would have been required to implement and adopt reasonable data security measures to comply with their legal obligations, and would have been forced to disclose material information regarding security.  Instead, without any such disclosure, Defendants maintained customer Personal Information in Starwood's or Marriott's databases and networks, where it was insecure and subject to attack for four years.

126.    Customers, including Plaintiff and class members, would not have provided Starwood or Marriott with their Personal Information had they known that Starwood or Marriott was misrepresenting the security of, and omitting the flaws in, its databases.  Consumers, including Plaintiff and class members, would have been less likely to book hotel reservations with Starwood or Marriott had Defendants disclosed the truth about Starwood's and Marriott's lax security. Additionally, Starwood's and Marriott's rooms would have been worth less to Plaintiff and class members if the truth had been known in the marketplace that Starwood and Marriott employed inadequate security measures.

127.    Defendants' unlawful, deceptive, and unconscionable acts include:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and class members' Personal Information, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and class members' Personal Information;

d. misrepresenting that they would protect the confidentiality of Plaintiff's and class members' Personal Information, including by implementing and maintaining reasonable security measures;

e. misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and class members' Personal Information;

f. omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and class members' Personal Information;

g. omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the

security and privacy of Plaintiff's and class members' Personal

Information;

h.  continuing to accept credit and debit card payments, and continuing to

store other Personal Information, after they knew or should have

known of the Data Breach and before they purportedly remediated the

Breach; and

i.  failing to timely notify Plaintiff and class members of the Data Breach.

128.  These unfair acts and practices violated duties imposed by law, including

but not limited to the FTC Act.  Specifically, Defendants violated Section 5 of the

FTC Act, 15 U.S.C. § 45, through their failure to employ reasonable and appropriate

measures to protect against unauthorized access to confidential consumer data.

129.  Defendants' conduct was intentional, knowing, and/or malicious because

they knew or were reckless in not knowing the value of consumers' personal

information, and that databases containing such information were targets for

hackers, yet they did not take adequate measures to secure their databases from

hacking.

130.  Defendants' violations of Connecticut law were done with reckless

indifference to the rights of Plaintiff and class members or, were an intentional or

wanton violation of those rights.

131.  Defendants' unfair acts and practices were: (i) ongoing failures to secure

the Personal Information of class members; and (ii) ongoing failures to comply with

common law and statutory duties pertaining to the security of such Personal

Information.  Such ongoing failures continued at least until the announcement of

the Data Breach in November 2018.  This action is filed within three years of the alleged violations, pursuant to C.G.S. 42-110g(f).

132.   Plaintiff and class members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

133.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and class members have suffered and will continue to suffer injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

**Sixth Cause of Action:**
**Violation Of Connecticut General Statute § 42-471,**
**On The Safeguarding Of Personal Information, Against All Defendants**

134.   Plaintiff repeats and realleges paragraphs 1-133, as if fully set forth herein.

135.   Connecticut law provides, in relevant part, that "[a]ny person in possession of personal information of another person shall safeguard the data, computer files and documents containing the information from misuse by third parties."  C.G.S. 42-471(a).  As defined in this statute, "personal information" means "information capable of being associated with a particular individual through one or more identifiers, including, but not limited to, … an account number, a credit or debit card number, a passport number, [or] an alien registration number…."  C.G.S. 42-471(c).

136.   As alleged in detail above, Defendants did not "safeguard … from misuse by third parties" uniquely-identifying Personal Information including but not limited to credit card numbers, debit card numbers, and passport numbers.

Defendants failed to institute reasonable safeguards to prevent the Data Breach and failed to disclose the Data Breach despite knowing of its existence for at least the period between September 8 and November 30, 2018.  Failure to disclose constitutes a distinct failure to "safeguard the data ... from misuse by third parties" inasmuch as it prevented Plaintiff and class members from taking timely remedial measures to tamp down "misuse."

137.    As a direct and proximate result of Defendants' violations of C.G.S. §42-471, Plaintiff and class members have suffered and will continue to suffer injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

138.    In addition, Plaintiff and the class assert claims for civil penalties to the maximum extent provided for under C.G.S. § 42-471(e) and C.G.S. § 42-472.

**Seventh Cause of Action:**
**Violation Of European Union General Data Protection Regulation ("GDPR"),**
**Against Defendant Marriott**

139.    Plaintiff repeats and realleges paragraphs 1-138, as if fully set forth herein.

140.    "GDPR" — *Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data and, repealing Directive 95/46/EC (General Data Protection Regulation)* (published OJ L 119,04.05.2016; or OJ L 127,23.5.2018) — provides that "[a]ny person who has suffered material or nonmaterial damage as a result of an infringement of [GDPR] shall have the right to receive compensation from the controller or processor for the damage suffered."  Article 82.

36

141.    Starwood and Marriott are a "processors" of personal data within the meaning of GDPR.

142.    "[P]ersonal data," for purposes of GDPR, is "any information relating to an identified or identifiable natural person ('data subject'); an identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person."  Article 4.1.

143.    In turn, "processing" is "any operation or set of operations which is performed on personal data or on sets of personal data, whether or not by automated means, such as collection, recording, organization, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by restriction, erasure or destruction."  Article 4.2.

144.    Starwood and Marriott collect, use, disclose, aggregate, and store personal data, including but not limited to names, addresses, payment card numbers, dates of birth, government-issued identification data, geolocation information, and social media account identification.

145.    Starwood and Marriott are "controllers" of personal data for purposes of GDPR, as they are each a "legal person … or other body which, alone or jointly with others, determines the purposes and means of the processing of personal data."  Article 4.7.

146.    Since the date GDPR came into force on May 25, 2018, Starwood and Marriott have been subject to the regulation's provisions regarding control and

processing of personal data.  Moreover, because data storage is a type of "processing" under the regulation, GDPR's requirements extend to data collected prior to GDPR's effective date.

147.    GDPR "applies to the processing of personal data in the context of the activities of an establishment of a controller or a processor in the [European] Union, regardless of whether the processing takes place in the Union or not."  Article 3.1.

    a.  As alleged above, Starwood and Marriott are and have been "controllers" or "processors" of "personal data," within the meaning of GDPR.

    b.  Starwood and Marriott have and have had at least one "establishment" in the European Union, inasmuch as they engage in the "effective and real exercise of activity through stable arrangements" within the Union.  Article 3.1.  At all relevant times, Starwood and Marriott operated hotels in the European Union.

    c.  Starwood's and Marriott's control over and processing of personal data, globally, is performed "in the context of the activities" of their E.U. establishments.  "Revenue-raising in the EU by a local establishment" — an activity in which Starwood and Marriott's E.U. hotels certainly engage — occur in the context of data control and processing that are "inextricably linked to the processing of personal data taking place outside the EU."  European Data Protection Board Guidelines 3/2018, adopted Nov. 16, 2018, at 7.  Starwood's and Marriott's revenue-raising activities in the E.U. are inextricably linked to their extraterritorial data processing, inasmuch as they maintain common databases of

European and non-European data subjects, and process bookings (both deriving revenue and collecting personal data) through the Marriott website.

148.    Defendants violated GDPR because they did not "implement appropriate technical and organisational measures to ensure a level of security appropriate to the risk," as required under GDPR Article 32 ("Security of processing"). Such measures include but are not limited to  (a) "pseudonymisation and encryption of personal data"; (b) "ensur[ing] the ongoing confidentiality, integrity, availability and resilience of processing systems and services; (c) implementing "a process for regularly testing, assessing and evaluating the effectiveness of technical and organisational measures for ensuring the security of the processing; and (d) "account[ing] … in particular" for risks presented from "unauthorised disclosure of, or access to personal data transmitted, stored or otherwise processed."

149.    Defendants further violated GDPR Articles 33 ("Notification of a personal data breach to the supervisory authority") and 34 ("Communication of a personal data breach to the data subject") by unduly delaying the notification of the Data Breach required to be made to affected individuals and supervisory authorities. The notification required by Articles 33 and 34 did not occur until on or about November 30, 2018, *i.e.*, 83 days after Marriott claims it learned of the Data Breach.

150.    Defendants did not process data consistently with GDPR Article 5 ("Principles relating to processing of personal data"). Among other violations, Marriott failed to abide Article 5's principle of "data minimization," which restricts controllers' datasets to that which is "adequate, relevant and limited to what is

necessary in relation to the purposes for which they are processed." Article 5.1 (c). Had Defendants properly implemented Article 5's minimization principle, it would have mitigated the impact of the Data Breach on Plaintiff and class members.

151.    Defendants violated GDPR Article 13 ("Information to be provided where personal data are collected from the data subject") by failing to include in Marriott's Global Privacy Statement: (i) the identity(s) of the controller of data and/or Marriott's data protection officer (Article 13.1); and (ii) disclosure of certain rights held by data subjects under GDPR, including the right to withdraw consent and the right to lodge a complaint with a supervisory authority (Article 13.2).

152.    Defendants' failures to comply with GDPR, including any or all the requirements detailed above, violated the rights of Plaintiff and class members, causing Plaintiff and class members to have suffered and to continue to suffer injury which they could not reasonably avoid, including ascertainable losses of money or property, and other damages as alleged above.

153.    Plaintiff, on behalf of himself and the class, seeks compensation (Article 82.1) for damages suffered, as well as other judicial remedies (Article 79.1) to mitigate the ongoing effects of the Data Breach.

## VII. PRAYER FOR RELIEF

Plaintiff, individually and on behalf of class members, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

1.    Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.    Declare that Plaintiff is a proper class representative;

3.    Appoint the undersigned as class counsel;

4.    Grant permanent injunctive relief prohibiting Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

5.    Require Defendants to provide appropriate credit monitoring services to Plaintiff and the class;

6.    Award Plaintiff and class members compensatory, consequential, and general damages in an amount to be determined at trial;

7.    Order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

8.    Award statutory damages, treble damages, and punitive or exemplary damages, to the extent permitted by law;

9.    Award Plaintiff reasonable attorneys' fees, costs, and expenses;

10.    Award prejudgment and post-judgment interest at the maximum legal rate; and

11.    Grant all such other relief as the Court deems just and proper.

## VIII.    JURY DEMAND

Plaintiff demands a trial by jury on all issues and claims for which a jury trial is available under the law.

Dated: April 26, 2019

**IVEY, BARNUM & O'MARA LLC**

  /s/ Michael J. Jones
Michael J. Jones (No. CT09759)
170 Mason Street
Greenwich, Connecticut 06830
Telephone: (203) 661-9462
mjones@ibolaw.com

Respectfully submitted,

**PIERCE BAINBRIDGE
BECK PRICE & HECHT LLP**

Deborah H. Renner (*PHV* forthcoming)
William L. Geraci (*PHV* forthcoming)
277 Park Avenue, 45th Floor
New York, New York 10172
Telephone: (212) 484-9866
drenner@piercebainbridge.com

Thomas D. Warren (*PHV* forthcoming)
30195 Chagrin Boulevard, Suite 210N
Pepper Pike, Ohio 44124
Telephone: (216) 370-7866
twarren@piercebainbridge.com

Theodore J. Folkman (*PHV* forthcoming)
One Liberty Square, 13th Floor
Boston, Massachusetts 02109
Telephone: (617) 313-7401
tfolkman@piercebainbridge.com

*Attorneys for Plaintiff
and for the Proposed Class*